UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,**<br><br>         **Plaintiff,**<br><br>v.<br><br>**DEBT FREEDOM ATTORNEYS, PLLC,** a New York Professional Service Limited Liability Company, **JACOB GINSBURG, DEBT ADVISORS US, LLC,** a New Mexico Limited Liability Company, **APRIL PARRA,** and **RAMON OCHOA, JR.**<br>         **Defendants.** | §§§§§§§§§§§§§§§§<br><br>Case No. EP-24-cv-00369-DCG |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in El Paso County, Texas for all calls in this case.

2.      Defendant DEBT FREEDOM ATTORNEYS, PLLC ("DFA") is a professional limited liability company organized and existing under the laws of New York. DFA can be served via registered agent owner and officer Jacob Ginsburg, 1 Concord Drive, Monsey, New York 10952.

3.      Defendant JACOB GINSBURG ("Ginsburg") is an attorney and officer and owner of Defendant DFA, personally participated in and directed the phone calls alleged herein, and can be served at 1 Concord Drive, Monsey, New York 10952.

4.      Defendant DEBT ADVISORS US, LLC ("Debt Advisors") is a limited liability company organized and existing under the laws of New Mexico and can be served via registered agent

April Parra, 12618 W State Ct, Glendale, Arizona 85307.

5.     Defendant APRIL PARRA ("Parra") is a natural person, resident of Arizona, Officer of Debt Advisors, personally participated in and directed the activities of Debt Advisors, and can be served at 12618 W State Ct, Glendale, Arizona 85307.

6.     Defendant RAMON OCHOA ("Ochoa") is a natural person, resident of Arizona, Officer of Debt Advisors, personally participated in and directed the activities of Debt Advisors, and can be served at 12618 W State Ct, Glendale, Arizona 85307.

7.     DFA, Ginsburg, Debt Advisors, Parra, and Ochoa are herein collectively referred to as "Defendants."

## JURISDICTION AND VENUE

8.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

9.     This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to the State of Texas and to this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation.  Defendants purposefully sent calls into Texas despite having no business relationship with Plaintiff.

   a. Defendants target Texas when marketing debt relief and regularly conduct business in this District, including telephone solicitation.

   b. Defendants purposefully sent phone calls to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendant DFA.

   c. Defendants Ginsburg, Parra, and Ochoa directed the calls to be sent into Texas and purposefully directed that Texas residents be targeted with the solicitation

phone calls.

d. The purposeful calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct*., 141 S. Ct. 1017 (2021).

10. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single phone call from Defendants DFA and Ginsburg which is the subject matter of this lawsuit.

11. This Court has venue over Defendants because the calls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code § 302.101

25. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in Texas.

26. "'Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item."

27. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

28. A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code §302.001(5).

29. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

30. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has

6

plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

31. The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs investigation costs, depositions expenses, witness fees, and attorney's fees.

32. Texas Business and Commerce code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

33. The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

34. Plaintiff personally successfully registered his phone number, 915-245-4374, on the National Do Not Call Registry in January 2021.

35. At all times relevant hereto, Plaintiff was the subscriber of the personal telephone number ending in 4374.

36. Defendant Ginsburg is an attorney aware of the TCPA, the TBCC, and the rules and regulations surrounding telephone solicitations.

37. Defendant Ginsburg is an attorney and barred by Texas State Bar ethics from soliciting clients with whom he does not have a preexisting business relationship.

38. Plaintiff had no business relationship with Defendants before any of the phone calls alleged in this Complaint.

39.     Plaintiff did not consent to any phone calls alleged in this Complaint.

40.     Plaintiff received at least nine (9) solicitation phone calls marketing debt relief to his personal phone number ending in 4374 without his consent and unrelated to an emergency.

41.     Plaintiff received the first phone call on October 18, 2023. Plaintiff received the phone call from phone number 833-982-2202. Plaintiff answered the phone and was briefly solicited for debt relief. Plaintiff asked the operator to not call him back and hung up the phone.

42.     On January 16, 2024, Plaintiff received a phone call from phone number 833-412-0345. A Google search of the phone number showed it is a number used for robocalls to solicit debt relief.

43.     On January 24, 2024, Plaintiff received a phone call from phone number 833-412-0346. A Google search of the phone number showed it is a number used for robocalls to solicit debt relief.

44.     On March 22, 2024, Plaintiff received a phone call that displayed 833-314-1433 on the caller identification. Plaintiff answered the phone and was solicited for debt relief. Plaintiff hung up the phone.

45.     On May 23, 2024, Plaintiff received a phone call that displayed 833-540-1102 on the caller identification. Plaintiff went through the process for the sole purpose of finding out who was behind the phone calls.

46.     Plaintiff was sent a contract from Defendants on May 23, 2024, via ClixSign to his email address, callier74@gmail.com. The body of the email stated, "This message was sent to you by Hailey Hight (docs@debtadvisorshelp.com), who is requesting your signature on documents."

47.     Plaintiff signed the contract to get a copy. The contract gave an email address of support@debtfreedomattorneys.com for correspondence.

48. On May 24, 2024, Plaintiff sent an email to support@debtfreedomattorneys.com alerting them of the TCPA and TBCC violating phone calls. Plaintiff further instructed Defendants to cancel his contract, not draft his bank account, and not call Plaintiff again.

49. On May 30, 2024, Plaintiff received a phone call that displayed 855-621-0793 on Plaintiff's caller identification. Plaintiff answered the phone call and was informed by the representative that there were insufficient funds to cover the draft scheduled for May 31, 2024.

50. Plaintiff informed the caller that he was driving, his Bluetooth had not picked up, and that he would call the number back on his caller identification.

51. Plaintiff called the 855-621-0793 number back and spoke to the representative. Plaintiff informed the representative that he had canceled the contract, informed them of TCPA violations, and asked them not to call Plaintiff anymore.

52. The representative informed Plaintiff that he needed to talk to "Monica." Plaintiff informed the representative that he did not need to talk to Monica, and again that he had canceled the contract, sent them a DNC request, and alerted them of TCPA and TBCC violations. Plaintiff told the representative not to have Monica call Plaintiff.

53. On May 30, 2024, Plaintiff received phone calls from 855-621-0793 at 10:42, 10:43, and 10:45 AM despite explicitly telling the representative that he did not want Monica to call him.

54. On May 30, 2024, at 10:44 AM, Plaintiff received a phone call from the phone number 602-754-1554. Through information and belief, this phone number belongs to "Monica," and was used to trick Plaintiff into answering the phone because Plaintiff was ignoring the phone calls from 855-621-0793.

55. Each and every phone call after October 18, 2023, was a knowing and willful violation as Defendants had been delivered a DNC request.

56. On May 30, 2024, at 10:45 AM, Plaintiff answered the phone call from 855-621-0793. Monica was on the phone. This was the same Monica Plaintiff had repeatedly told to not call Plaintiff.

57. On June 8, 2024, Plaintiff searched the website https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and looked for a valid Texas Telephone solicitation registration for Defendants.

58. Plaintiff did not find a valid Texas telephone solicitation registration for any of the Defendants. None of the Defendants have ever had a valid Texas telephone solicitation registration.

59. Table A shows the calls sent to Plaintiff by Defendants.

TABLE A:

| #: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | Oct 18, 2023 | 12:26 PM | 833-982-2202 | 2 min 35 secs. Solicited for debt relief. DNC request |
| 2. | Jan 16, 2024 | 11:01 AM | 833-412-0346 | 22 seconds. Solicited debt relief. Hung up the phone. |
| 3. | Jan 24, 2024 | 11:12 AM | 833-412-0345 | Debt relief solicitation |
| 4. | Mar 22, 2024 | 3:04 PM | 833-314-1433 | 22 seconds. Solicited debt relief. Hung up the phone. |
| 5. | May 23, 2024 | 4:48 PM | 833-540-1102 | Sent Contract |
| 6. | May 30, 2024 | 10:42 AM | 855-621-0793 | Missed Call |
| 7. | May 30, 2024 | 10:43 AM | 855-621-0793 | Missed Call |
| 8. | May 30, 2024 | 10:44 AM | 602-754-1554 | Missed Call |
| 9. | May 30, 2024 | 10:45 AM | 855-621-0793 | Spoke to Monica |

60. Plaintiff did not have a preexisting relationship with Defendants and Defendants had no reason to have Plaintiff's phone number.

10

61. Plaintiff's phone number had no reason to be in any database controlled by Defendants.

62. Defendants placed multiple unauthorized calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2021, which violated § 227(c) and 47 C.F.R. § 64.1200(c).

63. Defendants knew or should have known that its conduct would violate the TCPA and its implementing regulations because Plaintiff informed Defendants he was on the National Do Not Call Registry and informed Defendants of their TCPA and TBCC violations.

64. Defendant knew or should have known the requirements for making TCPA, and Texas sales-compliant telemarketing calls and thus knew or should have known that the unauthorized telemarketing calls and the many disregarded DNC requests complained of herein violated the TCPA, and Texas Business Commerce Code 302.101 and all of their regulations.

65. Defendants' unregistered phone calls caused Plaintiff to become aggravated and annoyed and resulted in Plaintiff having to spend hours attempting to uncover the identity of the anonymous telemarketers.

66. Plaintiff is a Texas resident and was located in Texas during all calls at issue in this Complaint.

67. Plaintiff maintains a telephone number with a 915 area El Paso, Texas area code.

68. No emergency necessitated any of these calls.

### TEXAS BUSINESS AND COMMERCE CODE § 302.101 VIOLATIONS

69. Plaintiff was located in Texas at all times during the calls at issue.

70. Plaintiff has been a Texas resident since 1988 and maintains a Texas area code (915) telephone number.

71. Each of the calls at issue in this case was to a Texas area code telephone number.

72. On June 8, 2024, Plaintiff searched for a telephone solicitation registration for Defendants at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

73. Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration. Plaintiff did not find any registration for Defendant.

74. Defendants have never been registered to telephone solicit from Texas or into Texas.

75. Each phone call at issue in this Complaint was a solicitation phone call.

76. Defendants Ginsburg and DFA were the sellers of their legal services through their authorized salesperson Debt Advisors.

77. Defendants Ginsburg and DFA had the responsibility to register as telephone solicitors under the TBCC as the sellers of their legal services.

## DEFENDANTS GINSBURG, PARRA, AND OCHOA ARE PERSONALLY LIABLE

78. Defendant Ginsburg, Parra, and Ochoa are personally liable for all calls made to Plaintiff on behalf of Defendant DFA as they personally directed the phone calls to be made.

79. Defendants Ginsburg, Parra, and Ochoa collectively wrote the scripts that their agents used on said calls described herein and trained their agents on live calls and on the usage of the scripts with potential customers.

80. Defendant Ginsburg directed the telephone solicitors on which states to call and during which hours to call.

81. Defendants Ginsburg, Parra, and Ochoa knowingly and willfully violate the TCPA regulations and do so because it benefits them and their companies.

82. Defendants Ginsburg, Parra, and Ochoa either directly ordered their agents to ignore the National Do-Not-Call Registry or indirectly by refusing to purchase the National Do-Not-Call

Registry and instructing their agents on how to use the National DNC Registry

83. There is precedent in the Western District for holding corporate officers personally liable when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

> Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are

jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

84. The Same Court held that corporate officers were also personally liable for DTPA violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

85. Defendant Ginsburg is the manager of Defendant DFA and controls the day-to-day operations of DFA and directs their employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

86. Defendants Parra and Ochoa are the sole managers and owners of Defendant Debt Advisors and control the day-to-day operations of Debt Advisors and direct their employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

87. Defendants Ginsburg, Parra, and Ochoa, are the masterminds who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

88. Defendants Ginsburg, Parra, and Ochoa are well aware the conduct violated the TCPA and refused to alter their behavior and have done nothing to make the unlawful, fraudulent, and unethical behavior they directed stop.

## DEFENDANTS GINSBURG AND DFA ARE VICARIOUSLY LIABLE

89. Ginsburg and DFA are "vicariously liable" under federal common law principles of

agency for TCPA violations committed by third-party telemarketers," such as Debt Advisors. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

90.     Ginsburg and DFA market legal representation through direct telephone solicitation by its hired telemarketer Debt Advisors, who act on their behalf. Debt Advisors enrolls potential clients for Ginsburg and DFA accepts those leads with full knowledge the phone call that contacted the customers violated the TCPA.

91.     Debt Advisors made the phone calls on behalf of Ginsburg and DFA with the actual knowledge and authority of Ginsburg and DFA.

92.     Ginsburg and DFA direct, control, authorize and pay Debt Advisors to generate leads for legal services through telephone solicitation. Moreover, they require, authorize, or at least permit Debt Advisors' telemarketers to solicit explicitly for debt relief representation.

93.     Ginsburg and DFA set the criteria for qualifying leads, which Debt Advisors must follow, and Debt Advisors transfer leads qualified on those criteria exclusively to Ginsburg and DFA. Plaintiff is unaware of the qualifying thresholds, but the salient question is how much consumer debt the potential client holds.

94.     On information and belief, Ginsburg and DFA, wrote or at least approved the call script Debt Advisors' telemarketers use when qualifying leads for Ginsburg and DFA.

95.     Ginsburg and DFA maintained interim control over Debt Advisors by controlling how, and under what circumstances, they would accept clients from Debt Advisors.

96.     Debt Advisors' telemarketers are Ginsburg and DFA's associates and do nothing to disturb the impression that Debt Advisors' telemarketers work for and speak and act on behalf of Ginsburg and DFA.

97.     Debt Advisors' telemarketers' initial call through Defendant Ginsburg and DFA's

acceptance of a completed representation application, the telemarketing of Ginsburg and DFA's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Ginsburg and DFA, the principals, with Debt Advisor acting as Ginsburg and DFA's agent.

98.     Debt Advisor, acting with actual and implied authority, made the prohibited calls, and qualified Plaintiff according to Ginsburg and DFA's criteria.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

99.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

100.    Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

101.    Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

102.    Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

103.    The calls to Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 18 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the

phone is not primarily used for any business purpose.

## COUNT ONE:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

104.    Plaintiff incorporates the preceding paragraphs 1-103 as if fully set forth herein.

105.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

106.    Defendants sent nine (9) calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

107.    Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the unauthorized calls described above, in the amount of $500 per call.

108.    Plaintiff is entitled to an award of at least $500 in damages for each such violation, 47 U.S.C. § 227(c)(5)(B).

109.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:
**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(Against Defendants DFA and Ginsburg)**

110.    Plaintiff incorporates the preceding paragraphs 1-103 as if fully set forth herein.

111.    Defendants DFA and Ginsburg and/or their affiliates or agents made at least five

(5) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.

112.    As a result of Defendants DFA and Ginsburg and/or their affiliates or agent's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

113.    As a result of Defendants DFA and Ginsburg and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.  Tex. Bus. and Com. Code 302.302(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants DFA, Ginsburg, Debt Advisors, Parra, and Ochoa jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violated the TCPA and Texas state law;

C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional knowing and willful violations jointly and severally against the corporation and individual for nine (9) calls.

E.   An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for nine (9) calls.

F.   An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.   An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity.

H.   Such further relief as the Court deems necessary, just, and proper.

October 11, 2024,                                                                                  Respectfully submitted,

/s/ Brandon Callier

_____

Brandon Callier
Plaintiff, Pro Se
1490A George Dieter Dr #174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

October 11, 2024,                                                                                  Respectfully submitted,

/s/ Brandon Callier

_____

Brandon Callier
Plaintiff, Pro Se
1490A George Dieter Drive #174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com